LIVIA M. KISER (SBN 285411)
*lkiser@kslaw.com*
MICHAEL D. ROTH (SBN 217464)
*mroth@kslaw.com*
KELLY L. PERIGOE (SBN 268872)
*kperigoe@kslaw.com*
SAMUEL C. CORTINA (SBN 310778)
*scortina@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

*Attorneys for Defendant*
NIKE, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LILLIAN JURDI, an individually [sic] and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NIKE, INC., an Oregon corporation; DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 2:24-cv-08093-GW-SK<br><br>The Honorable George H. Wu<br><br>**DEFENDANT NIKE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT**<br><br>[*Filed concurrently with [Proposed] Order*]<br><br>Date: January 13, 2025<br>Time: 8:30 a.m.<br>Location: Courtroom 9D |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 13, 2025, at 8:30 a.m., or as soon thereafter as the matter may be heard before the Honorable George H. Wu of the above-entitled Court, located at United States Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, Courtroom 9D, Defendant Nike, Inc. ("Nike") will and hereby does move the Court to dismiss Plaintiff's Complaint (the "Complaint"), with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion").

The grounds for the Motion are that (1) Plaintiff Lillian Jurdi does not have standing under Article III; (2) Plaintiff cannot state a claim because the trap and trace provision of the California Invasion of Privacy Act ("CIPA") only applies to telephones, not the Internet; and (3) under the extraterritoriality principle, Plaintiff cannot state a CIPA claim for conduct exclusively occurring outside of California. Because none of the deficiencies in the Complaint can be cured, Defendant moves for dismissal with prejudice.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 on November 8, 2024.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings and records on file in this case, all matters of which the Court may take judicial notice, and such other or further material as may be presented at or before the hearing on the Motion.

Dated: November 15, 2024

KING & SPALDING LLP

By: */s/ Michael D. Roth*
LIVIA KISER
MICHAEL D. ROTH
KELLY L. PERIGOE
SAMUEL C. CORTINA

Attorneys for Defendant NIKE, INC.

# TABLE OF CONTENTS


I. INTRODUCTION ........ 9

II. FACTUAL BACKGROUND ........ 10

A. Trap and Trace Devices ........ 10

B. Plaintiff Alleges Nike Installed a Trap and Trace Device (the "TikTok Software") on its Own Website ........ 11

C. Allegations Regarding Alleged Injury ........ 12

III. LEGAL STANDARD ........ 13

A. Rule 12(b)(1) ........ 13

B. Rule 12(b)(6) ........ 13

IV. PLAINTIFF DOES NOT HAVE STANDING UNDER ARTICLE III ........ 13

A. Article III Requires a Concrete and Particularized Injury ........ 13

B. Plaintiff Fails to Allege Any Concrete and Particularized Injury ........ 14

V. PLAINTIFF CANNOT STATE A CIPA CLAIM BECAUSE CIPA'S TRAP AND TRACE DEVICE PROVISION ONLY APPLIES TO TELEPHONES, NOT THE INTERNET ........ 16

VI. PLAINTIFF CANNOT STATE A CIPA CLAIM FOR CONDUCT EXCLUSIVELY OCCURRING OUTSIDE OF CALIFORNIA ........ 21

A. California Presumes its Laws Do Not Apply Extraterritorially ........ 21

B. CIPA's Trap and Trace Provision Does Not Apply Extraterritorially ........ 23

C. Plaintiff Improperly Attempts to Extraterritorially Apply CIPA ........ 24

i. The Location of the Allegedly Offending Conduct Is the Website Hosted Outside of California ........ 24

ii. Nike's Website Is Not Located in California ........ 27

VII. THE DEFICIENCIES IN THE COMPLAINT CANNOT BE CURED ........ 28

VIII. CONCLUSION ........ 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Hague*,
449 U.S. 302 (1981) (plurality opinion) ... 21

*Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*
885 F. Supp. 197 (C.D. Cal. 1995) ... 20

*Armstrong v. Allied Insurance Co.*,
2014 WL 12591844 (C.D. Cal. Aug. 19, 2014) ... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 13

*Brown-Forman Distillers Corp. v. New York State Liquor Auth.*,
476 U.S. 573 (1986) ... 21

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ... 15, 16

*Campbell v. Arco Marine, Inc.*,
42 Cal. App. 4th 1850 (1996) ... 24

*Capitol Records Inc. v. Thomas-Rasset*,
2009 WL 1664468 (D. Minn. June 11, 2009) ... 17

*Cody v. E. Gluck Corporation*
No. 23-cv-02286-HSG (N.D. Cal. Sep. 26, 2024) ... 14

*Cody v. Ring LLC*,
2024 WL 735667 (N.D. Cal. Feb. 22, 2024) ... 18

*Diamond Multimedia Sys., Inc. v. Super. Ct.*,
19 Cal. 4th 1036 (1999) ... 24

*Earll v. eBay, Inc.*,
599 F. App'x 695 (9th Cir. 2015) ... 27

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982) ... 21

*Eng. v. Gen. Dynamics Mission Sys., Inc.*,
808 F. App'x 529 (9th Cir. 2020) ... 25, 26

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021) ........ 19

*Fortner v. Superior Ct.*,
217 Cal. App. 4th 1360 (2013) ........ 25

*Hanley v. Int'l Ass'n of Machinists & Aerospace Workers*,
2022 WL 2117805 (C.D. Cal. June 1, 2022) ........ 26

*Healy v. Beer Inst., Inc.*,
491 U.S. 324 (1989) ........ 21

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........ 16

*Janicki Logging Co. v. Mateer*,
42 F.3d 561 (9th Cir. 1994) ........ 28

*Ji v. Naver Corp.*,
2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ........ 15

*Jurdi v. Blue Buffalo Company, LTD*,
24STCV19849 (Los Angeles Sup. Ct.) ........ 11

*Jurdi v. Charlotte's Web, Inc.*,
24STCV04402 (Los Angeles Sup. Ct.) ........ 11

*Jurdi v. Jones Soda Co. (USA), Inc.*,
24STCV14108 (Los Angeles Sup. Ct.) ........ 11

*Jurdi v. Landis Technology*,
24STCV19287 (Los Angeles Sup. Ct.) ........ 11

*Jurdi v. Latham Group, Inc.*,
24STCV20439 (Los Angeles Sup. Ct.) ........ 11

*Jurdi v. Lucky Opco, LLC*,
24STCV20159 (Los Angeles Sup. Ct.) ........ 11

*Jurdi v. Massage Envy Franchising LLC*,
24STCV14469 (Los Angeles Sup. Ct.) ........ 11

*Jurdi v. MMM Consumer Brands Inc.*,
24STCV01664 (Los Angeles Sup. Ct.) ........ 11

*Jurdi v. MSC Cruises (USA), LLC*,
24STCV14098 (Los Angeles Sup. Ct.) ........ 11

*Jurdi v. Nerdwallet Inc.*,
24STCV11780 (Los Angeles Sup. Ct.) ........ 11

*Jurdi v. Prezzee, Inc.*,
24STCV21428 (Los Angeles Sup. Ct.) .......... 11

*Jurdi v. Revlon Consumer Products LLC*,
24STCV08861 (Los Angeles Sup. Ct.) .......... 11

*Jurdi v. Ulta Beauty, Inc.*,
24STCV11049 (Los Angeles Sup. Ct.) .......... 11

*Kearney v. Smith*,
39 Cal.4th 95 (Cal. 2006) .......... 26

*Leocal v. Ashcroft*,
543 U.S. 1 (2004) .......... 20

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super., Los Angeles County Mar. 13, 2024) .......... 17

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. 2023) .......... 14, 15

*Massie v. Gen. Motors LLC*,
2022 WL 534468 (D. Del. Feb. 17, 2022) .......... 15

*Mejia v. Reed*,
31 Cal. 4th 657 (2003) .......... 18

*Midwest Title Loans, Inc. v. Mills*,
593 F.3d 660 (7th Cir. 2010) .......... 21

*Mikulsky v. Noom, Inc.*,
682 F.Supp.3d 855 (S.D. Cal. 2023) .......... 9, 15, 16

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) .......... 15

*Moody v. C2 Educ. Sys. Inc.*,
2024 WL 3561367 (C.D. Cal. July 25, 2024) .......... 20

*Morrison v. Nat'l Australia Bank*,
561 U.S. 247 (2010) .......... 23

*N. Alaska Salmon Co. v. A.J Pillsbury, et al.*,
174 Cal. 1 (1916) .......... 22

*N.Y. Life Ins. v. Head*,
234 U.S. 149 (1914) .......... 21

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023) .......... 21

*Norwest Mortg., Inc. v. Superior Ct.*,
72 Cal. App. 4th 214 (1999).......... 26

*O'Connor v. Uber Techs., Inc.*,
58 F. Supp. 3d 989 (N.D. Cal. 2014) .......... 22

*People v. Joseph*,
63 Cal. App. 5th 1058 (2021).......... 25

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007).......... 27

*Perfect 10, Inc. v. Yandex N.V.*,
962 F. Supp. 2d 1146 (N.D. Cal. 2013) .......... 27

*Rewis v. United States*,
401 U.S. 808 (1971) .......... 20

*Russo v. APL Marine Servs., Ltd.*,
135 F. Supp. 3d 1089 (C.D. Cal. 2015), aff'd, 694 F. App'x 585 (9th Cir. 2017).......... 22

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004).......... 13

*Sexton v. Spirit Airlines, Inc.*,
2023 WL 1823487 (E.D. Cal. Feb. 8, 2023) .......... 25, 28

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 13, 14

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011).......... 10, 22, 24

*Terenkian v. Republic of Iraq*,
694 F.3d 1122 (9th Cir. 2012).......... 13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 9, 15

*Tumampos v. Cathay Pac. Airways Ltd.*,
2017 WL 10446824 (N.D. Cal. Apr. 25, 2017) .......... 28

*Vita v. New England Baptist Hospital*,
494 Mass. 824 (Mass., 2024) .......... 17, 20

*Wright v. Adventures Rolling Cross Country, Inc.*,
2012 WL 12942824 (N.D. Cal. May 3, 2012) .......... 22, 25

*Wuest v. My Pillow, Inc.*,
2019 WL 3577176 (N.D. Cal., 2019).......... 17

**Statutes**

17 U.S.C. § 101 .......... 27

18 U.S.C. § 3123(b) .......... 20

Cal. Bus. & Prof. Code § 17200 .......... 17, 22

Cal. Civil Code § 1798.100 .......... *passim*

Cal. Civil Code § 1798.150 .......... 18

Cal. Gov. Code §12900 .......... 22

Cal. Penal Code § 27 .......... 25

Cal. Penal Code § 630 .......... *passim*

Cal. Penal Code § 632.01 .......... 18

Cal. Penal Code § 638.50 .......... 19

Cal. Penal Code § 638.50(c) .......... 10, 25

Cal. Penal Code § 638.51 .......... *passim*

Cal. Penal Code § 638.52 .......... 19, 23

Cal. Penal Code § 638.52(a)(3) .......... 19

Cal. Penal Code § 638.52(b) .......... 24

Cal. Penal Code § 638.52(d)(3) .......... 19

Cal Penal Code § 638.53 .......... 19

Cal. Penal Code § 777 .......... 25

Cal. Penal Code § 778 .......... 25

**Other Authorities**

Rule 12(b)(1) .......... 13

Rule 12(b)(6) .......... 13

United States Constitution Commerce Clause .......... 21

18 W. St. U. L. Rev. 549 (1990-1991) .......... 11

## I. INTRODUCTION

Plaintiff Lillian Jurdi ("Plaintiff") asserts one claim against Defendant Nike, Inc. ("Nike"), alleging that Nike installed and used on its website certain TikTok software that operates as a "trap and trace device" in violation of California Penal Code Section 638.51, part of the California Invasion of Privacy Act ("CIPA"). Plaintiff's claim is part of the latest trend in CIPA lawsuits, in which serial plaintiffs try to monetize alleged CIPA violations through the threat of class liability on behalf of a plaintiff who does not even attempt to allege concrete harm and for conduct that CIPA does not, and was never meant to, reach.

Section 638.51 criminalizes the installation or use of a "trap and trace device" (i.e. a device that captures incoming electronic or other impulses that identify the originating number or other identifying information) without a court order. Plaintiff's theory that Section 638.51 applies to the Internet and not just telephones would essentially criminalize the Internet, which cannot function without capturing users' identification information, like IP addresses. Given that the allegedly criminal conduct is ubiquitous on the Internet, it is no surprise that Plaintiff has not alleged a concrete injury. Plaintiff's sweeping theory of liability must fail in all events, but *certainly* in this case, where Nike's challenged conduct occurred outside of California and beyond the reach of CIPA's "trap and trace" provision.

Plaintiff's claim must be dismissed for at least three reasons.

*First*, Plaintiff has not alleged the particularized, concrete harm necessary for Article III standing under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). She fails to allege that Nike or TikTok collected any of her information through the software, let alone any of her personal information. Furthermore, identification of contact information, which is all Plaintiff alleges may occur through the software, does not create a cognizable injury for standing. Several courts have dismissed this exact claim on this ground. *See, e.g.*, *Mikulsky v. Noom, Inc.*, 682 F.Supp.3d 855, 864-65 (S.D. Cal. 2023) (collecting cases).

*Second*, Plaintiff cannot state a claim for relief because CIPA's trap and trace provision does not apply to data transmitted over the Internet. The California legislature has a carefully crafted and robust statutory framework for online data privacy—*i.e.*, the California Consumer Privacy Act (the "CCPA"). Plaintiff ignores the CCPA entirely, instead attempting to expand CIPA to criminalize online data practices that neither CIPA nor the CCPA reach. Her construction of CIPA is not plausible, but even if it were, the rule of lenity requires that any ambiguities in criminal statutes be resolved in defendants' favor.

*Third*, Plaintiff attempts to improperly apply CIPA to out-of-state conduct. Any "install[ation]" or "use" of a trap and trace device online necessarily occurs where the servers that host the website are located, and the servers that host Nike's website are all located outside of California (Plaintiff does not and cannot allege otherwise). The presumption against extraterritoriality does not permit Plaintiff to extend CIPA's reach to Nike's entirely out-of-state conduct. *See, e.g.*, *Sullivan v. Oracle Corp*., 51 Cal. 4th 1191, 1209 (2011) (presumption against extraterritoriality prohibited application of California unfair competition law statute to out-of-state conduct).

The Court should grant Nike's motion to dismiss on any of these grounds. And because none of these fatal problems can be cured, dismissal should be with prejudice.

## II. **FACTUAL BACKGROUND**

### *A. Trap and Trace Devices*

Typically, a trap and trace device is a device that law enforcement attaches to a telephone line to record the incoming "impulses" or electronic signals sent to that phone, such as the incoming phone number, but it does not record the contents of the communications like the words exchanged on the call as a tape recorder would. *See* Cal. Penal Code § 638.50(c) ("'Trap and trace device' means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the

contents of a communication."); Trap-and-Trace Device, Black's Law Dictionary (12th ed. 2024) ("An electronic device that police sometimes use to record certain facts about wire and electronic communications, such as dialing, routing, and signaling information, but not the contents of the communications themselves."). A trap and trace device thus operates as basic incoming Caller ID. *See* Riley K. Temple & Michael Regan, Recent Developments Relating to Caller ID, 18 W. St. U. L. Rev. 549 (1990-1991) ("Caller ID service is made possible by the use of a 'trap and trace' device."). CIPA prohibits the installation or use of trap and trace devices absent a court order or other enumerated exception. Cal. Penal Code § 638.51.

### ***B. Plaintiff Alleges Nike Installed a Trap and Trace Device (the "TikTok Software") on its Own Website***

Plaintiff, a serial CIPA litigant,[1] filed a threadbare Complaint alleging that she "visited" the Nike website once, on February 29, 2024, without any further information about that visit (such as how she accessed the website, whether she used a mobile phone or a computer to do so, which pages she visited, for how long, what links she clicked, what the purpose of her visit was, or where she was at the time). (ECF No. 1 ("Complaint") at ¶ 2.)

As to Nike's conduct, Plaintiff alleges that "Nike has partnered with TikTok to install sophisticated software on [the Nike.com] landing page to learn the location, source, and identity of consumers who happen to land on [Nike's] website." (*Id.* at

[1] Plaintiff has filed at least twelve CIPA lawsuits just this year: *Jurdi v. Prezzee, Inc.*, 24STCV21428 (Los Angeles Sup. Ct.); *Jurdi v. Latham Group, Inc.*, 24STCV20439 (Los Angeles Sup. Ct.); *Jurdi v. Lucky Opco, LLC*, 24STCV20159 (Los Angeles Sup. Ct.); *Jurdi v. Blue Buffalo Company, LTD*, 24STCV19849 (Los Angeles Sup. Ct.); *Jurdi v. Landis Technology*, 24STCV19287 (Los Angeles Sup. Ct.); *Jurdi v. Massage Envy Franchising LLC*, 24STCV14469 (Los Angeles Sup. Ct.); *Jurdi v. MSC Cruises (USA), LLC*, 24STCV14098 (Los Angeles Sup. Ct.); *Jurdi v. Jones Soda Co. (USA), Inc.*, 24STCV14108 (Los Angeles Sup. Ct.); *Jurdi v. Nerdwallet Inc.,* 24STCV11780 (Los Angeles Sup. Ct.); *Jurdi v. Ulta Beauty, Inc.*, 24STCV11049 (Los Angeles Sup. Ct.); *Jurdi v. Revlon Consumer Products LLC*, 24STCV08861 (Los Angeles Sup. Ct.); *Jurdi v. Charlotte's Web, Inc.*, 24STCV04402 (Los Angeles Sup. Ct.); *Jurdi v. MMM Consumer Brands Inc.*, 24STCV01664 (Los Angeles Sup. Ct.).

¶ 1.) Throughout the Complaint, Plaintiff repeats her allegation that this software was installed and operates *on Nike's own website*. Plaintiff never alleges (nor could she) that Nike installed or used any software on *her* device:

- "Defendant has installed *on its Website* software created by TikTok . . ." (*Id.* at ¶ 11) (emphasis added);
- "The TikTok Software gathers device and browser information . . . by running code or 'scripts' *on the Website* . . ." (*Id.* at ¶ 13) (emphasis added);
- "*The Nike website* instantly sends communications to TikTok when a user lands, . . ." (*Id.* at ¶ 14) (emphasis added); and
- "Defendant uses a trap and trace process *on its Website* by deploying the TikTok Software . . ." (*Id.* at ¶ 31) (emphasis added).

Plaintiff's class allegations similarly allege that the offending conduct occurs on Nike's website. She defines the proposed class as: "All persons within California who within the statute of limitations period whose information was *sent to TikTok by the Website* through the TikTok Software." (*Id.* at ¶ 21) (emphasis added). She identifies a "common question of fact and law" as "[w]hether [Nike] installed the TikTok software *on the Website*." (*Id.* at ¶ 23) (emphasis added). And she contends that her claim is typical because of the alleged use of "a trap and trace process on [Nike's] Website[.]" (*Id.* at ¶ 24.)

Plaintiff acknowledges that Nike is an Oregon company with its principal place of business in Oregon, (*id.* at ¶ 8), and that Nike is the entity that "operates https://www.Nike.com (the 'Website')" (*id.* at ¶ 11). Plaintiff does not (and cannot) allege that Nike's website (*i.e.*, any server hosting the website) is located in California or that Nike engaged in any conduct (prohibited or otherwise) in California.

***C. Allegations Regarding Alleged Injury***

Plaintiff alleges that the software collects "the phone number, email, routing, addressing and other signaling information of website visitors." (Complaint at ¶ 31.) Plaintiff does not allege that any of *her information* was ever identified or collected,

or used in any manner.

## III. LEGAL STANDARD

### *A. Rule 12(b)(1)*

To survive a Rule 12(b)(1) motion to dismiss, Plaintiff must establish all elements to support Article III standing, including injury in fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where, as here, a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, the pleading standards set forth in *Twombly* and *Iqbal* apply. *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012).

### *B. Rule 12(b)(6)*

Pursuant to Rule 12(b)(6), the Court should dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not" survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV. PLAINTIFF DOES NOT HAVE STANDING UNDER ARTICLE III

### *A. Article III Requires a Concrete and Particularized Injury*

To establish the constitutional minimum for Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Spokeo*, 578 U.S. at 338 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). It is the "plaintiff['s] . . . burden of establishing these elements." *Id.*

Injury in fact requires the plaintiff "to show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339 (quoting *Lujan*, 504 U.S. at

560). A particularized injury "must affect the plaintiff in a personal and individual way" and a concrete injury must be "real"—not "abstract"—and "actually exist." *Id.* at 339-40. Plaintiffs seeking to represent a class cannot rely on allegations of injuries to unidentified class members. *Id.* at 338 n.6. And statutory standing is not enough. "'Article III standing requires a concrete injury even in the context of a statutory violation.'" *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *3 (S.D. Cal. 2023) (quoting *TransUnion*, 141 S. Ct. at 2205). "[A]n injury in law is not an injury in fact." *Id.*

### *B. Plaintiff Fails to Allege Any Concrete and Particularized Injury*

Plaintiff only alleges that she "visited" the Nike website on one occasion, but does not plead any specific facts regarding her visit or Nike's conduct related to that visit. Critically, she omits any allegation that her own information was ever identified by the software. In *Cody v. E. Gluck Corporation*, the court dismissed a CIPA claim for lack of standing because the plaintiff also alleged only that she visited the website. The court noted that "[n]either the Court nor Defendant should have to infer such a fundamental part of her case." 2024 WL 4314187, at *2 (N.D. Cal. 2024). A particularized injury "must affect the plaintiff in a personal and individual way" and a concrete injury must be "real"—not "abstract"—and "actually exist." *Spokeo*, 578 U.S. at 339-40. Plaintiff here has not pleaded any such personal injury, so her claim must be dismissed.

Even if Plaintiff tried to cure this pleading defect, her claim would still necessarily fail, because Plaintiff cannot identify any cognizable injury beyond a mere alleged violation of CIPA. "The Supreme Court 'has rejected the proposition that a plaintiff automatically satisfies the injury in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Lightoller*, 2023 WL 3963823, at *3 (quoting *TransUnion*, 141 S. Ct. at 2205) (cleaned up). Rather than rely on a statutory violation, a plaintiff must be able to allege a particularized and concrete injury that bears "a close relationship

to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "disclosure of private information" and "intrusion upon seclusion." *TransUnion*, 141 S. Ct. at 2204.

Faithfully applying the Supreme Court's holding in *TransUnion*, courts have required a plaintiff to allege a particularized and concrete injury beyond a statutory violation of CIPA. *Lightoller*, 2023 WL 3963823, at *3; *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (dismissing CIPA claim where plaintiff failed to identify "any harm to her privacy"); *Massie v. Gen. Motors LLC*, 2022 WL 534468, at *2, 5 (D. Del. Feb. 17, 2022) (dismissing CIPA claim because plaintiff failed to allege a concrete injury); *Ji v. Naver Corp.*, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (dismissing CIPA claim because "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court") (quoting *TransUnion*, 141 S. Ct. at 2205).[2]

For instance, in *Mikulsky v. Noom, Inc.*, the court dismissed a serial plaintiff's CIPA claim for lack of standing because the plaintiff's conclusory allegations failed to "identify the specific personal information she disclosed that implicates a protectable privacy interest." 682 F. Supp. 3d at 864 (citation and quotation marks omitted). The court clarified that, even if the plaintiff could amend to specifically plead that the software collected "her basic contact information, such as her email address or phone number," then that still would not be sufficient, because "courts have found that type of information does not bear a close relationship to harms traditionally

[2] Some district courts have recently held that an alleged violation of CIPA is enough on its own for standing, but those orders improperly elevate older Ninth Circuit authority over *TransUnion*. *See Lightoller*, 2023 WL 3963823, at *3 (distinguishing "[t]hese holdings" as "untenable in light of the Supreme Court's holding in TransUnion[.]"). This Court is bound by Supreme Court precedent. *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003).

recognized as providing a basis for lawsuits in American courts." *Id.* (collecting cases).[3] Likewise, here, Plaintiff only alleges that the software identifies basic contact information (like phone numbers or emails), so even if Plaintiff could plead facts showing that the software did identify her personal contact information, that allegation would be futile, because that conduct does not create a cognizable injury-in-fact under Article III. *See id.*; *see also Byars*, 2023 WL 2996686, at *3 (dismissing CIPA claim because "[p]laintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest"); *Armstrong v. Allied Insurance Co.*, 2014 WL 12591844, at *6-7 (C.D. Cal. Aug. 19, 2014) (dismissing privacy claim where plaintiff did not specifically identify any personal information that the defendants allegedly accessed).

Plaintiff here does not, and cannot, identify any injury-in-fact that is particularized to her. Even if she could allege that the software identified signaling information from her device during her single visit to the website, she still would fail to meet her burden to show a particularized and concrete injury for purposes of Article III standing. Plaintiff's claim must therefore be dismissed.

## V. PLAINTIFF CANNOT STATE A CIPA CLAIM BECAUSE CIPA'S TRAP AND TRACE DEVICE PROVISION ONLY APPLIES TO TELEPHONES, NOT THE INTERNET

The legal theory Plaintiff advances—which would apply a telephone surveillance criminal statute to the Internet, thereby criminalizing the Internet's very

[3] For example, *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034 (N.D. Cal. 2022), explained that "basic contact information, including one's email address, phone number, or Facebook or Zynga username, is [not] private information." *Id.* at 1049 ("All of this information is designed to be exchanged to facilitate communication" and does not give rise to liability.). Similarly, here, the allegation that the "trap and trace device" collects "the phone number, email, routing, addressing and other signaling information of website visitors," (Complaint at ¶ 31), does not allege an intrusion of a cognizable privacy interest and does not allege a concrete injury sufficient to satisfy Article III.

operation—must be contextualized within the wave of CIPA class action lawsuits serial plaintiffs have filed against website owners. Because CIPA carries stiff statutory penalties, any judicial expansion of this criminal statute from telephones to the Internet would provide serial plaintiffs an opening to obtain outsized individual settlements based on the mere operation of a website. *See Wuest v. My Pillow, Inc.*, 2019 WL 3577176, at *3 (N.D. Cal., 2019) (identifying the serial plaintiff's "pattern of using the threat of class actions to extract an undeserved premium on an individual claim" under CIPA). The tactic of suing website owners under criminal wiretapping statutes has become a nationwide practice. In an opinion issued last month, however, the Massachusetts Supreme Judicial Court became the first court to strike it down in a controlling decision. *Vita v. New England Baptist Hospital*, 494 Mass. 824, 826 (Mass., 2024). That court held, "we cannot conclude that the wiretap act unambiguously prohibits and, indeed, criminalizes the interception of web browsing activity, because there appears to be a difference in kind and not degree between interactions on a website available to the public and private conversations in your house or on your telephone." *Id.* The Los Angeles Superior Court sustained a demurrer rejecting this same theory of CIPA liability on the ground that "[s]uch a broad based interpretation would potentially disrupt a large swath of internet commerce without further refinement as the precise basis of liability, which the court declines to consider." *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Super., Los Angeles County Mar. 13, 2024). As one court observed, "[i]f [the Wiretap Act] did apply in those cases, then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet." *Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009).

Courts need not expand CIPA to regulate Internet conduct because another statute already does so. The California Legislature has gone to great lengths to address online data privacy and security through the California Consumer Privacy Act of 2018

("CCPA"). That fulsome statutory framework precisely sets forth how third parties may access or process online data, what disclosures to consumers are required, and what specific rights consumers have with respect to accessing and disclosing their online personal information. Cal. Civil Code §§ 1798.100 (obligations of businesses), 1798.135 (permissible uses of consumer information), 1798.105 (consumer right to delete), 1798.106 (consumer right to correct), 1798.110 (consumer right to know), 1798.120 (consumer right to opt out of sale or sharing of personal information), 1798.121 (consumer right to limit use and disclosure of personal information), 1798.125 (consumer right of no retaliation). And in that statutory framework, the Legislature decided to provide a limited private right of action under the CCPA for data breaches. Cal. Civil Code §§ 1798.150. Plaintiff asks this Court to expand CIPA to the Internet and nullify the carefully crafted CCPA.

Moreover, the Legislature has amended CIPA since multiple times, including since it enacted the CCPA, and has declined to expand CIPA's trap and trace provision to apply to the transmission of data between computers. *Cody v. Ring LLC*, 2024 WL 735667, at *3 (N.D. Cal. Feb. 22, 2024) (finding that "[the plaintiff] fails to account for CIPA's multiple amendments" when arguing "that CIPA should be interpreted to apply to new technologies"). Indeed, other provisions of CIPA's statutory scheme *do expressly* address the Internet. *See* Cal. Penal Code § 632.01 (addressing disclosures and distributions "in any forum, including, but not limited to, Internet Web sites and social media"). The absence of similar specific language in Section 638.51 counsels in favor of construing "trap and trace" devices in line with their traditional meaning: devices that are attached to a telephone line.

The terms of CIPA's trap and trace provision also must "be construed with reference to the whole system of law of which it is a part," which forecloses Plaintiff's attempt to apply this provision to Internet browsing. *Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003). Specifically, Cal. Penal Code 638.51 states that "a person may not install or use a … trap and trace device without first obtaining a court order pursuant to

Section 638.52 or 638.53." Two terms clarify that Penal Code 638.51's prohibition on "install[ing] or us[ing]" a "trap and trace device" *without a court order* only applies to telephones and not the Internet.

First, the definition of "trap and trace" device, found in Section 638.50, refers to "a device or process that captures the incoming electronic or other impulses that identify the *originating number* or *other* dialing, routing, addressing, or signaling information likely to identify the source of a wire or electronic communication, but not the contents of a communication." The term "originating number" refers to a telephone number, which acts as a series qualifier that limits the remaining definition to electronic impulses that identify *telephone numbers*—but not electronic impulses that identify the vaguely defined *Internet data* the Complaint puts at issue. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 403 (2021) (applying series qualifier cannon to limit the TCPA).

Second, any court order authorizing the installation or use of a trap and trace device pursuant to Section 638.52(d)(3) *must* "specify … *[t]he number* and, if known, physical location of the *telephone line* to which the … trap and trace device is to be attached[.]" Cal. Penal Code § 638.52(d)(3) (emphasis added). This is a clear indication of the legislature's view that trap and trace devices can only be attached to *telephone lines*—i.e. lines or wires associated with telephone numbers—and not to computers accessing the internet.

Moreover, Plaintiff's reading of Sections 638.50, 638.51, and 638.52 would lead to an absurd result and unintended consequences. Under that incorrect reading: (1) Section 638.50's statutory definition of a "trap and trace" device conceivably should be construed to apply to the Internet; (2) Section 638.51 would then prohibit the installation or use of a "trap and trace" device on any website without a court order (or other exception); but (3) under Section 638.52(a)(3)'s law enforcement exception to the ban on such devices—which only contemplates attaching a trap and trace device to a telephone line—law enforcement could never obtain the requisite court order

permitting them to install and use a trap and trace device on a website to track Internet activity as part of a criminal investigation.

In fact, the Central District of California long ago construed the substantively identical language of 18 U.S.C. § 3123(b)—the federal "trap and trace" law requiring a court order specify "the number . . . and if known, the location of the *telephone line* to which the . . . trap and trace device is to be attached"—as limiting "trap and trace" devices to "only devices that are 'attached' to a telephone line," despite the absence of a specific limitation in the statutory definition of a "trap and trace device." *Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995).

The statute is thus clear that Section 638.51 is limited to telephones, but to the extent there is any ambiguity, the Court must apply the rule of lenity to resolve it in defendants' favor, as the Massachusetts Supreme Judicial Court did in *Vita. Vita*, 494 Mass. at 847-48. The rule of lenity constrains Plaintiff's attempted expansion of a criminal wiretapping statute to the Internet.[4] *See Rewis v. United States*, 401 U.S. 808, 812 (1971) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity[.]"); *Leocal v. Ashcroft*, 543 U.S. 1, 12, n.8 (2004) (rule of lenity applies to statutes with both criminal and civil applications). If the Legislature intended to criminalize the basic infrastructure of the Internet by outlawing devices that identify IP addresses, then the Legislature must say so, because all website owners have a constitutional right to be on notice that their conduct could subject them to criminal penalties.

---

[4] Nike understands that Plaintiff will rely on Judge Klausner's CIPA analysis to argue that tracking software "plausibly" falls within the definition of a "trap and trace device." *Moody v. C2 Educ. Sys. Inc.*, 2024 WL 3561367, at *3 (C.D. Cal. July 25, 2024). Respectfully, however, *Moody*—which did not address many of the issues presented herein, including the existence of the CCPA—was decided incorrectly, and, in addition, it did not consider the rule of lenity in its novel application of Section 638.51 to the Internet.

## VI. PLAINTIFF CANNOT STATE A CIPA CLAIM FOR CONDUCT EXCLUSIVELY OCCURRING OUTSIDE OF CALIFORNIA

In addition to lacking standing and a cognizable theory, the presumption against extraterritoriality prevents Plaintiff from applying CIPA's trap and trace provision to Nike's alleged out-of-state conduct.

### A. *California Presumes its Laws Do Not Apply Extraterritorially*

The extraterritorial exercise of power by a State implicates the Commerce Clause of the United States Constitution and the inherent limits of State authority. *Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982) ("The Commerce Clause . . . precludes application of a state statue to commerce that takes place wholly outside of the State's borders."); *see also Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989) ("a statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature"); *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 579 (1986) ("When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry."). *But see Nat'l Pork Producers Council v. Ross,* 598 U.S. 356 (2023) (no per se rule under Dormant Commerce Clause forbidding enforcement of state laws that have practical effect of controlling commerce outside the State). It can also in certain circumstances run afoul of the Due Process Clause. *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981) (plurality opinion); *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 668 (7th Cir. 2010) ( "due process . . . protects persons from unreasonable burdens imposed by government, including extraterritorial regulation that is disproportionate to the governmental interest"); *see also N.Y. Life Ins. v. Head*, 234 U.S. 149, 161 (1914).

Informed by those constitutional limits, California, like many other states, has

had a "presumption against extraterritorial application" of its own laws, in California's case, that dates "as far back as 1916." *Wright v. Adventures Rolling Cross Country, Inc.*, 2012 WL 12942824, at *4 (N.D. Cal. May 3, 2012); *see also Sullivan*, 51 Cal. 4th at 1207 (stating presumption against extraterritoriality).

To overcome this longstanding presumption, "[t]he [California legislature's] intention to make [an] act operative with respect to occurrences outside the state" must be "clearly expressed or reasonably . . . inferred 'from the language of the act or from its purpose, subject-matter, or history.'" *N. Alaska Salmon Co. v. A.J Pillsbury, et al.*, 174 Cal. 1, 4 (1916) (citation omitted). Courts have applied this rule to hold that many California statutes do not reach extraterritorially, as exemplified in the following decisions:

- The Unfair Competition Law, *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1007 (N.D. Cal. 2014); *see also Sullivan*, 51 Cal. 4th at 1209 ("Business and Professions Code section 17200 does not apply to overtime work performed outside California for a California-based employer by out-of-state plaintiffs in the circumstances of this case");
- The California Labor Code for failure to pay a minimum wage and overtime, and to provide accurate itemized wage statements, rest breaks and meal periods, and compensation for all hours worked, *Wright*, 2012 WL 12942824, at *3–4; *see also O'Connor*, 58 F. Supp. 3d at 1006-07 (collecting cases and concluding "the Labor Code violations upon which Plaintiffs rely do not apply extraterritorially");
- The Workmen's Compensation, Insurance, and Safety Act, *N. Alaska Salmon Co.*, 174 Cal. at 4; and
- The California Fair Employment and Housing Act, *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1095 (C.D. Cal. 2015), aff'd, 694 F. App'x 585 (9th Cir. 2017).

Because—like CIPA's "trap and trace" provision—none of these statutes contained

an express statement or implication that they were meant to reach conduct outside of California, those courts properly applied the presumption against extraterritoriality to dismiss the asserted claims. As set forth below, Plaintiff's CIPA trap and trace claim should be dismissed, too.

### *B. CIPA's Trap and Trace Provision Does Not Apply Extraterritorially*

No court appears to have applied CIPA's trap and trace provision extraterritorially, and there is no indication from either the statute's express language, or by implication, that the California legislature intended that provision to criminalize conduct occurring entirely outside the California border. To the contrary, based on its language and overall scheme, CIPA's prohibition on trap and trace devices is plainly limited to offending conduct that occurs within California alone.

As an initial matter, there is *no express language* in CIPA stating that the statute is meant to reach into other states and outlaw conduct occurring there. *See* Cal. Penal Code § 638.51.; *see also Morrison v. Nat'l Australia Bank*, 561 U.S. 247, 248 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none.").

Nor is there anything in CIPA to indicate that the legislature *implicitly* intended for it to reach extraterritorial conduct.

CIPA's trap and trace provision provides that no person "may . . . install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." Cal. Penal Code § 638.51. To apply this specific provision extraterritorially would result in the absurdity of forbidding other state's law enforcement agencies from using trap and trace devices to investigate the potential violation of their own laws within their own borders. Law enforcement officers violate CIPA if they do not first obtain a court order to install a trap and trace device. *Id.* CIPA lists the specific set of offenses that may qualify for such an order, including enumerated provisions of various California statutes such as the California

Fish and Game Code. Cal. Penal Code § 638.52(b). But no other state's laws are listed. *See id.* If CIPA applied extraterritorially, then law enforcement agencies throughout the country would have to apply for a court order in California under the California Penal Code to install and use a trap and trace device in their own states. And, because only California offenses qualify for such an order, a Florida law enforcement officer could never obtain an order to install a trap and trace device in Florida to investigate a potential violation of Florida law.

Undoubtedly, the California legislature did not implicitly intend to restrict the investigative tools available to law enforcement agencies in California, and certainly not in *other* states. The legislature expressly stated the opposite: "it is not the intent of the Legislature to place greater restraints on the use of listening devices and techniques by law enforcement agencies than existed prior to the effective date of this chapter." Cal. Penal Code § 630.

Because "[n]either the language of" CIPA "nor its legislative history provides any basis for concluding the Legislature intended" CIPA "to operate extraterritorially," the presumption against extraterritoriality applies to CIPA "in full force." *Sullivan*, 51 Cal. 4th at 1207. CIPA thus cannot be interpreted to criminalize the use and installation of trap and trace devices on websites located outside of California. As set forth below, that means CIPA cannot apply to Nike's websites.

### *C. Plaintiff Improperly Attempts to Extraterritorially Apply CIPA*

#### i. The Location of the Allegedly Offending Conduct Is the Website Hosted Outside of California

The alleged offending conduct occurred where Nike's website is located—i.e., where the servers that host the website are located—as that is where any trap and trace device would be installed and used (as confirmed by Plaintiff's allegations).

An offense is committed in the location where "the conduct which gives rise to liability" occurs. *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1059 (1999); *see also Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1852 (1996)

(California statutes do not "apply to nonresidents where . . . the tortious conduct took place out of this state's territorial boundaries.").[5] "To avoid an impermissible extraterritorial application of state law, a 'crucial element' of [the plaintiff's] claim must have occurred in California." *Eng. v. Gen. Dynamics Mission Sys., Inc.,* 808 F. App'x 529, 530 (9th Cir. 2020); *Sexton v. Spirit Airlines, Inc.*, 2023 WL 1823487, at *1 (E.D. Cal. Feb. 8, 2023) (finding that "material elements of the cause of action" must take place in California, and dismissing claim of California resident where material conduct occurred outside of California). Applying that principle, the court in *Wright v. Adventures Rolling Cross Country, Inc.*, dismissed the plaintiffs' California Labor Code claims as impermissibly attempting to reach extraterritorial conduct, even though the plaintiffs were "California residents and the employer [was] based in California (such that presumably payments [were] made in California) but the work [was] performed principally outside of California." 2012 WL 12942824, at *4. Despite these California connections, because no crucial element of the employment claims in *Wright* occurred in California, the extraterritoriality principle barred their claims.

The crucial elements of Plaintiff's claim are the *installation or use* of a trap and trace device. *See* Cal. Penal Code § 638.51. According to the manner in which trap and trace devices are defined in the statute and work as a practical matter, and as confirmed by Plaintiff's allegations, the location of the crucial conduct here thus is where the trap and trace device was installed and used—*i.e.*, on Nike's website. *See* Cal. Penal Code § 638.50(c) (a "trap and trace device" "captures *the incoming*

---

[5] This proceeding is not a criminal case. However, to the extent the Court finds California Penal Code sections 27, 777, 778, or 778a are relevant to determining where a "crime" was committed, it still would not be in California because there is no allegation that Nike began or consummated any of the alleged installation or use of a trap and trace device within California. *See Fortner v. Superior Ct.*, 217 Cal. App. 4th 1360, 1365 (2013) (dismissing criminal claim where the defendant had not engaged in any offending conduct in California even though the harm of the crime may have been felt in California); *see also People v. Joseph*, 63 Cal. App. 5th 1058, 1070 (2021) (same).

electronic or other impulses . . . of a wire or electronic communication") (emphasis added); Complaint ¶¶ 11, 14, 26 (referencing conduct on the Nike website).

It is immaterial to this analysis that Plaintiff may be a California resident or that she may have been in California at the time of the alleged conduct (she does not allege from where she accessed the website). *See Eng. v. Gen. Dynamics Mission Sys., Inc.*, 2019 WL 2619658, at *6 (C.D. Cal. May 8, 2019), aff'd, 808 F. App'x 529 (9th Cir. 2020) (dismissing claims seeking to apply California law extraterritorially even though the plaintiff was a "California resident, received her pay in California, paid California income taxes, performed a significant amount of her work assignments in California, was terminated in California, and her HR representative was based in California") (cleaned up); *Norwest Mortg., Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 224–25 (1999) (dismissing claims where, *inter alia*, injuries were "caused by conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operations are outside of California"); *Hanley v. Int'l Ass'n of Machinists & Aerospace Workers,* 2022 WL 2117805, at *7 (C.D. Cal. June 1, 2022) ("Plaintiff's residency in California, and the fact that Plaintiff was in California when the termination decision was made and when he was informed of his termination, are insufficient to overcome the presumption against extraterritorial application of FEHA.").

Thus, while some other provisions of CIPA have been applied extraterritorially, none of those provisions focused so directly on the conduct of the defendant—i.e., the *installation or use* of a trap and trace device. For example, where the statute prohibits recording the *contents* of a confidential communication, the provision "applies to a multistate event in which a crucial element—the confidential communication by the California resident—occurred in California." *Kearney v. Smith*, 39 Cal.4th 95 (Cal. 2006). Here, by contrast, the material conduct giving rise to a trap and trace claim occurs where the trap and trace device is installed and used, which is where the servers that host Nike's website are located.

**ii. Nike's Website Is Not Located in California**

A website is "located" where the servers that host the website are located, and the servers that host Nike's website are not located in California. Thus, no trap and trace device could have been either installed or used within California.

Based on the way the Internet works, courts have recognized that a website is physically located where the servers that host the website are located. "The Internet is a world-wide network of networks . . . all sharing a common communications technology." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1155 (9th Cir. 2007) (quotation marks omitted). Although they are accessible anywhere via a browser like Internet Explorer or Google Chrome, webpages are not themselves physical locations, *Earll v. eBay, Inc.*, 599 F. App'x 695, 696 (9th Cir. 2015) (web services are not "an actual physical place"), and, as the Ninth Circuit explained, "[n]o images are stored on a webpage; rather, the HTML instructions on the webpage provide an address for where the images are stored, whether in the webpage publisher's computer or some other computer." *Perfect 10*, 508 F.3d at 1155. Those tangible computers and servers that store the underlying information and operate the underlying software are said to "host" the webpage. *See id.* For purposes of determining where a website itself is located, courts thus look to where the servers hosting the website are physically located. *See id.*

For instance, with respect to the Copyright Act, courts have dismissed claims for improper extraterritorial application where the servers hosting the webpage displaying the infringing work were not located in the United States even though the infringing content on the webpage was displayed and viewed in the United States. *E.g.*, *Perfect 10*, *Inc. v. Yandex N.V.*, 962 F. Supp. 2d 1146, 1153 (N.D. Cal. 2013), as amended (Sept. 6, 2013) ("Perfect 10 does not demonstrate that Yandex in fact stored or displayed full-sized copies of the Perfect 10 images on Yandex's United States *servers*.") (emphasis added). The same applies here: the software that Plaintiff alleges Nike installed would only have been installed on the servers hosting Nike's

website, and that is also the location where that software operates, regardless of the fact that the webpage is accessible and viewable elsewhere.

Notably, Plaintiff does *not* allege that Nike's website is hosted in California, that the software was installed in California, or that the software runs in California (nor could she because that all occurs outside of California). Plaintiff cannot rely on her territorial silence to avoid dismissal. Courts routinely dismiss claims because plaintiffs failed to affirmatively plead that the offending conduct took place in California. *Sexton v. Spirit Airlines, Inc.*, 2023 WL 1823487, at *1 (E.D. Cal. Feb. 8, 2023) (noting "void" in plaintiff's allegations regarding the location of the alleged conduct and dismissing claims); *Tumampos v. Cathay Pac. Airways Ltd.*, 2017 WL 10446824, at *7 (N.D. Cal. Apr. 25, 2017) ("Because Plaintiffs have not alleged facts sufficient to establish that they worked principally in California or that Defendant is a California employer, the Court finds that their claims for meal and rest period violations fail as to the work performed outside of California."). The same result is warranted here. Plaintiff does not (and cannot) plead that any of the allegedly offending conduct occurred in California.

Because Plaintiff's claim arises from extraterritorial conduct, which CIPA does not reach, it must be dismissed.

## VII. THE DEFICIENCIES IN THE COMPLAINT CANNOT BE CURED

The Court should grant Nike's Motion and dismiss Plaintiff's claim with prejudice because Plaintiff cannot cure these fatal pleading deficiencies. *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994) (leave to amend "need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay") (citation omitted). *First*, Plaintiff cannot cure her standing deficiency because even if Plaintiff could identify evidence that the software collected her contact information (she cannot), that does not create a sufficiently concrete or cognizable injury to satisfy Article III standing. *Second*, Plaintiff cannot amend to

state a claim because, as a matter of law, CIPA's trap and trace provision does not apply to Internet data. *Third*, Plaintiff's extraterritoriality problem cannot be cured because to the extent Nike installed or ran any software "on" its website, the servers hosting Nike's website are not located in California.

## VIII. CONCLUSION

For the foregoing reasons, Nike respectfully requests that this Court grant this motion without leave to amend, and enter judgment in Nike's favor.

Dated: November 15, 2024

KING & SPALDING LLP

By: */s/ Michael D. Roth*
LIVIA KISER
MICHAEL D. ROTH
KELLY L. PERIGOE
SAMUEL C. CORTINA

Attorneys for Defendant NIKE, INC.

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Nike, Inc., certifies that this brief contains 6,998 words, which complies with the word limit of L.R. 11-6.2.

Dated: November 15, 2024

KING & SPALDING LLP

By: */s/Michael D. Roth*
MICHAEL D. ROTH

Attorneys for Defendant NIKE, INC.