LIVIA M. KISER (SBN 285411)
*lkiser@kslaw.com*
MICHAEL D. ROTH (SBN 217464)
*mroth@kslaw.com*
KELLY L. PERIGOE (SBN 268872)
*kperigoe@kslaw.com*
SAMUEL C. CORTINA (SBN 310778)
*scortina@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

*Attorneys for Defendant*
NIKE INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LILLIAN JURDI, an individual and on behalf of all others similarly situated,

Plaintiff,

v.

NIKE, INC., an Oregon company; DOES 1 through 25, inclusive,

Defendant.

Case No. 2:24-cv-08093-FLA(Ex)

The Honorable Fernando L. Aenlle-Rocha

**DEFENDANT NIKE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

[Request for Judicial Notice and exhibit concurrently filed herewith]

Date: February 7, 2025
Time: 1:30 p.m.
Location: Courtroom 6B

# TABLE OF CONTENTS

I. INTRODUCTION ........ 6
II. PLAINTIFF CANNOT STATE A CIPA CLAIM FOR CONDUCT EXCLUSIVELY OCCURRING OUTSIDE OF CALIFORNIA ........ 7
III. PLAINTIFF LACKS ARTICLE III STANDING ........ 9
A. Plaintiff Fails to Allege an Injury in Fact ........ 9
B. Plaintiff's Attempts to Conjure an Injury in Fact Fail ........ 11
C. Plaintiff Fails to Allege Concrete Injury from TikTok's Alleged "Fingerprinting," Traceable to Defendant, and Redressable ........ 13
IV. CIPA'S TRAP AND TRACE PROVISION DOES NOT APPLY TO THE INTERNET ........ 15
V. CONCLUSION ........ 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6, 8

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 9

*Casillas v. Transitions Optical, Inc.*,
2024 WL 4873370 (Cal. Super., Los Angeles County Sep. 09, 2024) .......... 17

*Cody v. E. Gluck Corporation*,
2024 WL 4314187 (N.D. Cal. 2024) .......... 10

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) .......... 10

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .......... 14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 11, 12, 13

*In re: Google Inc. Cookie Placement Consumer Priv. Litig.*,
934 F.3d 316 (3d Cir. 2019) .......... 12

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 13, 17, 18

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 10, 11

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024) .......... 14

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......... 11

*Ji v. Naver Corp.*,
2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) .......... 11, 12, 14

*Leocal v. Ashcroft*,
543 U.S. 1 (2004) ........ 16

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super., Los Angeles County Mar. 13, 2024) ........ 9, 15, 17

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) ........ 12, 14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........ 7, 15

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ........ 13

*Mirmalek v. Los Angeles Times Comm.'s LLC*,
2024 WL 5102709 (N.D. Cal. 2024) ........ 17

*Moody v. C2 Educ. Sys. Inc.*,
2024 WL 3561367 (C.D. Cal. July 25, 2024) ........ 13, 17

*Palacios v. Office Depot, LLC*,
Los Angeles Super. Ct. No. 24STCV11977 (December 4, 2024) ........ 10

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) ........ 12

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) ........ 8

*Rewis v. United States*,
401 U.S. 808 (1971) ........ 16

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 65409 (C.D. Cal. Jan. 8, 2025) ........ 13

*Rodriguez v. Fountain9 Inc.*,
2024 WL 4905217 (November 21, 2024) ........ 10

*Rodriguez v. Plivo Inc.*
2024 WL 5184413 (Cal. Super. Oct. 2, 2024) ........ 17

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (2021) ........ 10

*Shah v. Fandom, Inc.*,
2024 WL 4539577 (N.D. Cal., 2024) .......... 17

*Somers v. Apple*,
729 F.3d 953 (9th Cir. 2013) .......... 6, 8

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) .......... 6

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) .......... 6, 9, 13

**Statutes**

Cal. Penal Code § 629.51(a)(2) .......... 16

Cal. Penal Code § 630 et seq. .......... 6, 7

Cal. Penal Code § 631 .......... 13

Cal. Penal Code § 635 .......... 10

Cal. Penal Code § 638.50 .......... *passim*

Cal. Penal Code § 638.51 .......... *passim*

Cal. Penal Code § 638.52(d)(3) .......... 16

Illinois Biometric Information Privacy Act .......... 12

**Other Authorities**

Fed. R. Civ. P. 11 .......... 8

## I. INTRODUCTION

Defendant Nike, Inc. ("Nike") explained in its Motion to Dismiss that Plaintiff's sole claim for violation of the California Invasion of Privacy Act ("CIPA") should be dismissed because: (1) Plaintiff was not injured by any conduct alleged in the case and therefore lacks Article III standing; (2) CIPA's "trap and trace" provision does not apply to the Internet; and (3) the "trap and trace" provision cannot be applied extraterritorially to Nike's conduct. Nothing in Plaintiff's Opposition resuscitates her misapplication of CIPA's "trap and trace" provision, so the First Amended Complaint (the "FAC") should be dismissed without leave to amend.

*First*, Plaintiff's implicit concession that CIPA's "trap and trace" provision cannot be applied extraterritorially is dispositive. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1209 (2011) (explaining presumption against extraterritorial application of California law). Plaintiff does not argue that Nike's conduct occurred within California. Instead, she asserts (without authority) that she had no obligation to allege that the challenged conduct falls within the statute's territorial limitations. But to allege an "entitlement to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up), and cross the line from *possible* to *plausible*, a complaint cannot be "factually neutral." *Somers v. Apple*, 729 F.3d 953, 960 (9th Cir. 2013) (quoting *Twombly,* 550 U.S. at 557 n.5).

Plaintiff's concern that recognizing the limited reach of California's "trap and trace" provision will lead to a parade of horribles is specious. Multiple privacy laws protect California consumers, and a federal trap and trace law addresses the installation and use of trap and trace devices on a nationwide level. No court since CIPA's enactment has applied California's "trap and trace" law to out-of-state conduct. This Court should not be the first.

*Second*, if the Court proceeds beyond the "trap and trace" provision's territorial limitations, Plaintiff lacks standing because she has not, and cannot, allege "an injury in fact" "caused by the defendant," as Article III requires. *TransUnion LLC v.*

*Ramirez*, 141 S. Ct. 2190, 2203 (2021). Plaintiff did not plead the invasion of *any* legally protected interest, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), let alone one *caused* by Nike's supposed installation and use of a trap and trace device.

*Third*, CIPA's "trap and trace" provision does not apply to data transmitted over the Internet. Even though the statute does not once mention the Internet, Plaintiff argues that because its language is "vague," it should be read expansively to cover the Internet. But CIPA is a criminal statute, and the rule of lenity requires criminal statutes to be construed narrowly even in civil cases. In addition, the plain language of the statute, its legislative history, and parallel case law regarding the federal trap and trace provision all support that the statute does not apply to the Internet.

The fatal deficiencies in Plaintiff's FAC are not curable. The Court should grant the Motion without leave to amend.

## II. PLAINTIFF CANNOT STATE A CIPA CLAIM FOR CONDUCT EXCLUSIVELY OCCURRING OUTSIDE OF CALIFORNIA

Nike's Motion established that CIPA's "trap and trace" provision does not apply extraterritorially to conduct occurring entirely outside of California. *See* Mot. at 21-25. Accordingly, to state a claim for violation of CIPA's "trap and trace" provision, Plaintiff was required to allege that Nike's alleged wrongful conduct—*i.e.*, the installation or use of a trap and trace device on its own website, FAC ¶¶ 11, 14, 23(a), 24—took place in California, Mot. at 25. She did not.

Plaintiff's Opposition does not dispute that the presumption against extraterritoriality restricts the application of CIPA's "trap and trace" statute to a defendant's conduct within California. Nor does Plaintiff argue that Nike's installation or use of a trap and trace device occurred within California. *See* Opp., *passim*. These implicit concessions *alone* warrant granting this Motion.

Nonetheless, Plaintiff offers three meritless justifications for her failure to plead that Nike's conduct occurred in California.

*First*, Plaintiff argues—without support—that she was not obligated to

"*disprove[e]* extraterritoriality" by affirmatively alleging that the challenged conduct occurred in California, or pleading some other cognizable basis for applying California law extraterritorially. Opp. at 17-18. But it is axiomatic that Plaintiff bears the burden of alleging facts sufficient to state a viable claim—and that includes applicability of the statute to the defendant's conduct: She must "provide the grounds of [her] entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). And it is not "enough that the complaint is 'factually neutral''; it must be 'factually suggestive.'" *Somers*, 729 F.3d at 960 (quoting *Twombly,* 550 U.S. at 557 n.5). Plaintiff's complete silence on this required component of her claim thus warrants dismissal.[1] *See* Mot. at 28 (citing *Sexton v. Spirit Airlines, Inc.*, 2023 WL 1823487, at *1 (E.D. Cal. Feb. 8, 2023) and *Tumampos v. Cathay Pac. Airways Ltd.*, 2017 WL 10446824, at *7 (N.D. Cal. Apr. 25, 2017)).

*Second*, Plaintiff complains that Nike's extraterritoriality argument is based on "counsel's unsworn factual representations about the location of its servers, none of which is in the complaint." (Opp. 16-17.) But this flips the Plaintiff's burden—it is *Plaintiff* who must plausibly allege Nike's conduct occurred *within* California. Moreover, Nike's explanation that its website and host servers are not located in California is entirely consistent with Plaintiff's admission that Nike is an Oregon-based company, FAC ¶ 8—and simply confirms that Plaintiff cannot articulate factual allegations to resuscitate her claim or amend the FAC within the confines of Rule 11.

*Finally*, Plaintiff disputes that "for extraterritoriality purpose a [company's] website is 'located' wherever its servers are located." Opp. at 17. Plaintiff criticizes Nike's reliance on *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007), which applied the "server test" in an analogous way to determine the location of alleged copyright infringement. But Plaintiff offers no alternative basis for

---

[1] That Plaintiff believes "there is no way" to establish her claim without discovery does not relieve Plaintiff of her burden to make a good-faith allegation that Nike's conduct occurred within California. *See* Opp. at 17.

determining a website's location. That is because under any test—where the servers are located, or Nike's principal place of business or place of incorporation—Nike's website is not located in California.

Because Plaintiff bears the burden to allege that Nike's supposed installation and use of the TikTok Software on its website occurred in California, and she has failed to provide any factual allegations in this regard, the FAC must be dismissed without leave to amend on this basis alone.

## III. PLAINTIFF LACKS ARTICLE III STANDING

Nike's Motion demonstrated that Plaintiff's bare-bones allegations were insufficient for Article III standing because they alleged, at most, a statutory injury, not (1) "concrete, particularized, and actual or imminent" harm (2) caused by the Defendant's challenged conduct and (3) that could be redressed through this litigation. *TransUnion*, 141 S. Ct. at 2203. Plaintiff's Opposition fails to demonstrate that she has adequately alleged any of these requirements.

### *A. Plaintiff Fails to Allege an Injury in Fact*

To allege that she "has suffered a concrete and particularized Article III injury," Plaintiff was required to identify "specific personal information she disclosed that implicates a protectable privacy interest." *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023). She did not.

*First*, Plaintiff failed to allege that Nike used the TikTok Software to: (i) "identif[y] the *originating number or other dialing, routing, addressing, or signaling information*" of (ii) *her* device that she used to access Defendant's website. Penal Code 638.50 (emphasis added). Mot. at 11-12. Plaintiff's generic allegations do not identify the device she used to access the website, which could have been a work or public computer, a friend's phone, a videogaming console, or a device without an "originating number" at all. *See Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Super., Los Angeles County Mar. 13, 2024) (dismissing claim only alleging "a 'device' without any actual specific reference to a mobile phone or

other potential form of communication device"). If the device on which she accessed the Website is not connected to her personally (*e.g.*, a work computer), Plaintiff has no particularized injury. *See Cody v. E. Gluck Corporation*, 2024 WL 4314187, at *2 (N.D. Cal. 2024) ("Neither the Court nor Defendant should have to infer such a fundamental part of her case.")

*Second*, even if Plaintiff could allege that the TikTok software identified her specific information, that allegation would be futile, because there is no privacy interest in the type of information encompassed by Sections 638.50(c) and 638.51. As state courts have recently held in analyzing injury-in-fact under a test "equivalent" to Article III standing, because a Section 638.51 claim "is premised only on collecting 'dialing routing, addressing, or signaling information,'" a plaintiff's allegation that the defendant uses software "to collect additional personal identifying information" "fail[s] to allege facts showing that she suffered an injury caused by Defendant's alleged violation of Penal Code 638.51." Request for Judicial Notice, Ex. A (*Palacios v. Office Depot, LLC*, Los Angeles Super. Ct. No. 24STCV11977 (December 4, 2024)) at p. 5; *see also Rodriguez v. Fountain9 Inc.*, 2024 WL 4905217, *3-4 (November 21, 2024) (sustaining demurrer without leave to amend a Section 638.51(a) claim alleging defendant installed software that acted as a "pen register" to capture her IP address, because plaintiff failed to meet the "concrete" injury requirement).

These decisions are persuasive and correct. Article III standing is claim-specific; it must be demonstrated "for each claim plaintiffs seek to press and for each form of relief that is sought." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1188–89 (N.D. Cal. 2020) (cleaned up). It "is not dispensed in gross." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (cleaned up). The Article III analysis thus begins with identifying the alleged statutory injury. *See Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 522 (2021) (Aenlle-Rocha, J.) (finding "Plaintiff has alleged Nike violated § 635 only through Nike's possession of the code" from the third-party

software provider and "restrict[ing] its Article III standing analysis accordingly"). Focusing only on those alleged acts that support the "trap and trace" claim, as the Court must, Article III standing thus must be based on Nike's use of software that identifies "information reasonably likely to identify the source" of Plaintiff's communication. Penal Code §§ 638.50(c), 638.51(a).

Regardless of the data identified by Plaintiff (Opp. at 6), the "trap and trace" provision is only concerned with the "source" of a communication (§ 638.50(c)), and the collection of that information does not implicate a protectable privacy interest. *See In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 604 (9th Cir. 2020) (users do "not maintain a reasonable expectation of privacy" in the "the to/from addresses of their messages or the IP addresses of the websites they visit" (cleaned up)). In *Heeger*, for example, the plaintiffs alleged that Facebook collected "IP addresses showing locations where [the plaintiff] accessed his Facebook account," which the court noted "describes a practice akin to a pen register recording the outgoing phone numbers dialed on a landline telephone"—a corollary to the "trap and trace" process. *Heeger*, 509 F. Supp. 3d at 1190. "That will not do for a privacy injury," the court held. *Id.* Because plaintiffs "cannot be injured from the collection of IP addresses," they "lack[ed] Article III standing for the privacy claims under … CIPA that are premised on that ostensible injury." *Id.*; *see Ji v. Naver Corp.*, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (plaintiffs failed to allege facts to show that "user and device identifiers" are the type of information that could give rise to a privacy injury); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022 ("basic contact information, including one's email address, phone number, or Facebook or Zynga username, is [not] private information").

***B. Plaintiff's Attempts to Conjure an Injury in Fact Fail***

Because it is only the conduct covered by Section 638.51 that matters for standing purposes, Plaintiff's argument that the FAC alleges greater privacy intrusions than merely identifying her "contact information" is beside the point. Opp.

at 4-6. Even assuming that Section 638.50(c) extends to the kind of "device and browser information, geographic information, and referral tracking" Plaintiff alleges, *Id*. at 6 (quoting FAC ¶ 13), that is still not a concrete harm for Article III. Courts have held that even allegations that software "tracks videos watched, created, liked, and/or commented on by users" and tracks when a user "is operating within [a messenger application's] timeline feature" are "not sufficient to state a claim for intrusion upon seclusion or invasion of privacy." *Ji*, 2022 WL 4624898, at *11; *see Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (no concrete privacy injury from collection of data sufficient to "record a website visitor's electronic communications, including her 'mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of webpages visited, and/or other electronic communications in real-time'").

Most of the cases on which Plaintiff relies to argue she has alleged a concrete injury are inapposite because they involve entirely different alleged privacy invasions based on different claims (*i.e.*, not Section 638.51 trap-and-trace claims). In *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019), the alleged Illinois Biometric Information Privacy Act violation was the use of "facial-recognition technology" to "obtain information that is detailed, encyclopedic, and effortlessly compiled." *Id.* at 1273 (cleaned up). *In re Facebook* involved wiretapping and other statutory violations arising from the allegations that Facebook compiled plaintiffs' personally identifiable browsing history by continuing to collect their data even after they had logged off Facebook, linking such data with their Facebook profiles to create "cradle-to-grave profile[s]." *In re Facebook, Inc.*, 956 F.3d at 598-99; *see also In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) (same). These privacy intrusions differed in kind and degree from the mere "source" information at issue here, which courts repeatedly hold is insufficient for standing. These cases, moreover, predate the Supreme Court's holding that a statutory violation alone is insufficient for Article III standing. *See Lightoller*, 2023 WL 3963823, at *3

(rejecting plaintiff's reliance on *In re Facebook, Inc.*, 956 F.3d 589, because its standing holding was "untenable in light of" *TransUnion*).

Ignoring the weight of persuasive California authority, Plaintiff's standing argument relies on just one case involving a Section 638.51 claim, *Moody v. C2 Educ. Sys. Inc.*, 2024 WL 3561367, at *3 (C.D. Cal. July 25, 2024). In that outlier case, Judge Klausner noted that an allegation that the defendant used TikTok Software to collect "Plaintiff's information" described an actionable privacy invasion.[2] *Id.* at *4. Judge Klausner, however, has since correctly refined this reasoning, acknowledging that when it comes to implicating the right to privacy for purposes of the injury-in-fact requirement, "[n]ot all information will qualify." *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 65409, at *2–3 (C.D. Cal. Jan. 8, 2025) (citing *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023))). Rather, "[w]hether the right to privacy is implicated depends on the sort of information revealed." *Rodriguez*, 2025 WL 65409, at *2–3 (dismissing CIPA § 631 claim on Article III standing grounds). Even in *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1046–47 (S.D. Cal. 2023)—which improperly found standing "in gross" rather than on a claim-by-claim basis—the court acknowledged that "[c]ourts have been hesitant to extend … invasion of privacy to the routine collection of personally identifiable information as part of electronic communications[.]" *Id.* at 1047 (cleaned up). Indeed, although Plaintiff ignores most of these cases—as she must when arguing that the collection of "source" information is enough—courts regularly hold that allegations that a defendant collected "basic contact information" are not sufficient for Article III standing. *See, e.g.*, *Mikulsky*, 682 F. Supp. 3d at 864 (collecting cases).

### ***C. Plaintiff Fails to Allege Concrete Injury from TikTok's Alleged "Fingerprinting," Traceable to Defendant, and Redressable***

---

[2] In *Moody*, the defendant had not argued the plaintiff lacked standing. Judge Klausner alluded *sua sponte* to standing requirements as a way of distinguishing cases the defendant had cited to argue there was no private right of action. *Id.* at *3.

Unharmed by Defendant's alleged conduct, Plaintiff argues that her injury comes from the TikTok Software's process of "fingerprinting" through which it "matches … [visitor data] with existing data TikTok has acquired and accumulated about hundreds of millions of Americans." FAC ¶ 12; *see* Opp. at 6. But this theory of injury fails at all three elements for standing.

*First*, whatever Plaintiff means by "fingerprinting," Plaintiff has not alleged that TikTok in fact *has* any of her identifying information from other sources from which to create a so-called "fingerprint." Without that allegation, she cannot show concrete harm even by third-party TikTok. *See Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *5 (C.D. Cal. July 12, 2024), adopted by, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) (dismissing complaint by same counsel based on same material allegations because plaintiff did not allege sufficient facts to show that "the fingerprinting process" would produce a "match" to connect plaintiff's identity "with the anonymous information").[3]

Even if Plaintiff amended her pleading to allege that accessing Nike's website somehow added to the "fingerprint" of data for Plaintiff in TikTok's possession, Plaintiff would still fail to allege a cognizable injury. *See Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) ("The fact that ASI's software allegedly captured … Plaintiff's personal details and browsing history … is insufficient to demonstrate … a serious invasion of a protected privacy interest." (cleaned up)); *see also Ji*, 2022 WL 4624898, at *11 (same with respect to videos watched); *Lightoller*, 2023 WL 3963823, at *4 (same with respect to mouseclicks on defendant's website). That is particularly true for *this* Plaintiff—a serial litigant (*see* Mot. at 11 n.1) who

---

[3] The omission of an allegation that TikTok has Plaintiff's data is not a mere technicality. For example, *Hughes* found the "fingerprinting" process would only work if the plaintiff had a TikTok account, which the plaintiff did not allege. 2024 WL 5179916, at *5. But anyone with a TikTok account would necessarily have consented to TikTok's privacy policy, (https://www.tiktok.com/legal/page/us/privacy-policy/en), which covers its practices.

accessed the Nike website solely to generate a purported CIPA violation. There can be no privacy interest in information that Plaintiff created to try to gin up a claim, knowing such information would form the basis of her own publicly-filed allegations. Plaintiff thus cannot identify any particularized, concrete injury for purposes of Article III.

*Second*, Plaintiff deliberately blurs Nike and TikTok by alleging (incorrectly) that "Defendant used" her "[contact] information to fingerprint the data and deanonymize Plaintiff" when she really means TikTok. Opp. at 6. The distinction between Nike and TikTok matters. Article III does not permit a party to sue over an alleged injury that is the result of "the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. Plaintiff does not (and cannot) allege that *Nike's* use of software to identify the visitors to its website is the cause of her alleged "fingerprinting" injury by TikTok.

## IV. CIPA'S TRAP AND TRACE PROVISION DOES NOT APPLY TO THE INTERNET

Plaintiff's theory would also impermissibly apply a telephone surveillance criminal statute to the Internet, thereby criminalizing the collection of "source" information—such as IP addresses—that goes to the Internet's basic functionality. Indeed, Plaintiff simply ignores that courts have recognized that "[s]uch a broad based interpretation would potentially disrupt a large swath of internet commerce without further refinement as the precise basis of liability." *Licea*, 2024 WL 1698147, at *4 (sustaining demurrer rejecting same theory of liability). Instead, she asserts incorrectly that Section 638.51 "unambiguously applies to internet communications." Opp. at 11.

But this provision does not use the words "Internet" or "website"—unlike other recently amended provisions of CIPA that do. *See* Mot. at 18:23-19:5. In the absence of express language stating the statute applies to the Internet, it cannot be "unambiguous" that it does. At best, the statute is ambiguous, which means that

because CIPA is a criminal statute, under the rule of lenity, it must be interpreted narrowly. *See Rewis v. United States*, 401 U.S. 808, 812 (1971); *Leocal v. Ashcroft*, 543 U.S. 1, 12 n.8 (2004).

Plaintiff argues that the term "electronic communication" in the definition of "trap and trace device" means that "internet communications" are encompassed by the statute. Opp. at 10-11 (citing § 638.50). The term "electronic communication," however, merely describes the manner in which signals may be sent to a trap and trace device (*i.e.*, over a wire or electronically). Penal Code § 629.51(a)(2). Plaintiff's argument thus does not respond to the Motion's statutory interpretation arguments, which center on the many statutory terms that refer expressly—and only—to the collection of information from telephones, irrespective of whether that information was sent electronically or via a wire. *See* Mot. at 19:11-21:7. This includes that any court order authorizing law enforcement to install or use a trap and trace device *must* "specify … *[t]he number* and, if known, physical location of the *telephone line* to which the … trap and trace device is to be attached[.]" Penal Code § 638.52(d)(3) (emphasis added).

Plaintiff attempts to harmonize the narrow law enforcement exception with her expansive interpretation of the prohibition by implausibly arguing that the law enforcement exception can be "read as . . . simply allowing a court order that does not specify a telephone line when one does not exist." Opp. at 14. This makes no sense. Specifying "the number" is *mandatory* in this statute and there is simply no avoiding that Section 638.52(d)(3) pertains to attaching a trap and trace device *to a telephone line*. If the telephone line "does not exist," then there is nothing for the trap and trace device "to be attached" to. Penal Code § 638.52(d)(3). While Plaintiff speculates that perhaps "the Legislature determined that law enforcement doesn't need to be using trap and trace devices for internet communications," Plaintiff provides nothing beyond her own conjecture.

Plaintiff is also incorrect that "courts have repeatedly and universally rejected"

Nike's interpretation. Opp. at 10:20-11:1. In fact, multiple courts have declined to apply the trap and trace provision to Internet communications. *Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *4 (Cal. Super., Los Angeles County Sep. 09, 2024) ("The pen register statute did not, and does not, criminalize the process by which all websites communicate with all users who choose to access them."); *Rodriguez v. Plivo Inc.*, WL 5184413, at *2 (Cal. Super., Los Angeles County Oct. 02, 2024) (dismissing trap and trace claim applied to Internet communications); *Licea*, 2024 WL 1698147, at *4.

The federal cases on which Plaintiff relies for the contrary proposition turn on a determination that this provision is intentionally "vague" and "expansive." *See Greenley*, 684 F. Supp. 3d at 1050 (finding statutory definition "is vague and inclusive as to the form of the collection tool"); *Mirmalek v. Los Angeles Times Comm.'s LLC*, 2024 WL 5102709, at *3 (N.D. Cal., 2024) (same); *Shah v. Fandom, Inc.*, 2024 WL 4539577, at *4 (N.D. Cal., 2024) ("Based on the expansive statutory definition of a pen register, 'tracking software could plausibly constitute a pen register under §§ 638.50 and 638.51.'") (citation omitted).

The echo chamber effect of these cases can be traced to *Greenley*. But *Greenley* applied Section 638.51 to the collection of source information "from [the plaintiff's] *cellular telephone*." 684 F. Supp. 3d at 1035, 1050 (emphasis added). The court held the plaintiff had stated a trap-and-trace claim because, instead of "physical machines," "[t]oday, pen registers take the form of software" that gives companies "the ability to hack into a person's *telephone*." *Id.* at 1050 (emphasis added). But the part of the statute *Greenley* held was "vague and inclusive" was "as to the form of the *collection tool*—'a *device or process*.'" *Id.* (citing Penal Code § 538.50(b)) (emphasis added). *Greenley* was careful to note that as "to the type of data a pen register collects," "[t]he definition is *specific*." *Id.* (emphasis added).

*Moody* relied on *Greenley* for the proposition that the statute's "'expansive' language suggests a broad scope" to find it applied to the Internet. 2024 WL 3561367,

at *2. But that is not what *Greenley* held. To be sure, a trap-and-trace device can include software that tracks telephone numbers, but that does not extend the reach of the statute to track website visitors.

Tellingly, none of those cases analyzed the statutory language through the lens of the rule of lenity, which requires constraining this purportedly "vague" statute and dismissing Plaintiff's claim, because website owners are owed the due process right to be put on notice that their ubiquitous conduct could be considered criminal under a decades-old statute that has only ever previously applied to telephones.

## V. CONCLUSION

For the foregoing reasons, Nike respectfully requests that this Court grant this motion without leave to amend, and enter judgment in Nike's favor.

Dated: January 24, 2025

KING & SPALDING LLP

By: */s/ Michael D. Roth*
LIVIA KISER
MICHAEL D. ROTH
KELLY L. PERIGOE
SAMUEL C. CORTINA

Attorneys for Defendant NIKE INC.

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Nike, Inc., certifies that this brief contains 4,200 words, which complies with the word limit of L.R. 11-6.2.

Dated: January 24, 2025

KING & SPALDING LLP

By: */s/ Michael D. Roth*
MICHAEL D. ROTH

Attorneys for Defendant NIKE, INC.